COLUMBIANA.
April, 1817.

Ohio
*v.*
Neil.

## COLUMBIANA COUNTY—APRIL TERM, 1817.

PRESENT—TAPPAN, *President;* SMITH, ATTERHOLT AND BROWN, *Associates.*

## OHIO vs. NEIL.

Murder in the first degree, must be by express malice,
Murder in the second degree, includes those cases where the malice is implied.
Manslaughter, is the killing another in a sudden quarrel.
Where there is no intention to kill, it cannot be murder by the statute.
Intoxication is no excuse or palliation.
If any one of the jury entertain a reasonable doubt of the prisoner's guilt, they should acquit.
What is a reasonable and what an unreasonable doubt.

INDICTMENT for Murder.

The prisoner elected to be tried in this court, and pleaded, Not Guilty.

On the trial, it appeared from the evidence, that the prisoner and his wife (the deceased) lived in a cabin about five miles from New Lisbon, with no other person in their family—they were very poor, and both addicted to intoxication. On the —— day of —— last, Mrs. Loudon, living about a mile from them, went to their house about noon, and found them both much in liquor; the deceased set out to go for a bucket of water, she went a few rods and fell down. Mrs. Loudon helped her up; the deceased then returned to the house, and fell forwards against the back wall of the fire place. The prisoner jumped up, pushed her, called her a rascal for getting drunk, and said he would give her a good whaling for it. Soon after, the deceased started to go home with Mrs. Loudon to get some meat; she went a few steps from the door, complained of a pain in her side, and then returned. In the evening Wm. Watson was at the house : the deceased was leaning against the wall at the head of the bed; she asked the prisoner several times for a drink of water; he took no notice of her until Watson spoke to him; he then gave her a drink of water; she soon after complained of being cold, and asked the prisoner several

times to help her to the fire; he at first refused, but on Watson's expostulating with him, he helped her near the fire; she then held out her hand, which was bloody and wounded on the back, and said "Jemmy dear, look where you hurt my hand." As Watson was going away, he heard the prisoner call the deceased a damn'd drunken bitch, and tell her never to let him see her in that situation again; he struck at her mouth with the back of his hand; whether he hit her or not, the witness could not say, as he was at the instant leaving the house.

COLUMBIANA.
April, 1817.

Ohio
v.
Neil.

About midnight, the prisoner went to Mr. Loudon's, and said that the deceased had slipped out of bed from him, and he had found her, when he awoke, lying on the floor by the side of the bed, he was afraid she was dead, and wanted one of Mrs. Loudon's sons, (one of whom was twelve the other fourteen years old) to go and stay at his house, while he could go for Mrs. Forbes; the youngest boy went home with him; the prisoner lighted a candle; he and the boy went to the bed; the deceased was on the bed and covered with the bed clothes; they removed them from her face; the boy observed that she was dead; the prisoner said, "It is hard times for me, then;" the skin was broken on one cheek, and her face was bloody; there was blood on a chair post, on the door, floor, and in one place on the wall near the bed; the deceased had her clothes on. The prisoner then went to Mrs. Forbes, and told her that the deceased had slipped out of bed from him, and had fallen in the fire; he said he wanted Mrs. Forbes to hasten with him, for he allowed she would scarcely be alive when they got there. Mrs. Forbes and her son went with the prisoner to his house; the son was sent off for a quart of whiskey; the prisoner and Mrs. Forbes laid out the deceased, (Mrs. Forbes secreted herself so that she could not be be produced as a witness on the trial.) The body was examined by the coroner's inquest, when it appeared that the skin had been rubbed off from the right cheek, a small burn was on the forehead near the eye-brow, the latter not singed; she was burned also on the chin, the outside of her arms, from her fingers to above her elbows, on her right hip and below her knees on each leg. The surgeon who examined the body, stated that the burning seemed as though she had been laid by the fire, as no blisters were raised, nor was the hair singed on the skin—on the back of her left hand was a wound, as though it had been struck and penetrated with the knot of a stick; a wound also on her right hand; bruises on both thighs; her left foot was much swelled, and two of the bones were broken in such a manner as that she could not have walked; in one nostril was

COLUMBIANA. blood; on the back part of her head was an incision an
April, 1817. inch and an half in length, and in depth to the bone, and
Ohio    a bruise below the incision; the hair had been folded over
v.      the wound on the head, and was matted with blood.
Neil.

POTTER, HALLOCK, and WHITTLESEY, for the state. cited East's
Crown Law, 224, 214, 232 and 234—4th Bl. Com. 177, 188, 190, 198,
200, and 25—Addison's Rep. 106, 165, and 379.

GOODENOW and WRIGHT, for the prisoner, cited 2d M'Nally, 577
to 580—1st M'Nally 42 and 52—and 1st Hall's Law Jour. 70.

The PRESIDENT, after commenting particularly upon the evidence,
as tending to prove that the deceased was killed by the prisoner,
observed to the jury:

If you are satisfied, gentlemen, that the deceased was killed by the
prisoner, it will be necessary for you to determine whether such killing
is murder in the first degree, murder in the second degree, or man-
slaughter.

In the "act for the punishment of crimes," murder in the first
degree is defined to be, "when any person shall purposely, and of
deliberate and premeditated malice, or in the perpetration or attempt
to perpetrate any rape, arson, robbery, or burglary, kill another;" and
murder in the second degree, "when any person shall purposely and
maliciously, but without deliberate and premeditated malice, kill
another:" and manslaughter, "when any person shall unlawfully kill
another, without malice of any kind, either upon a sudden quarrel, or
*unintentionally*, while the slayer is in the commission of some
unlawful act." Murder in the first degree, includes all those cases
where the killing is perpetrated with deliberate and premeditated
malice; that is, when the malice is expressed, as by lying in wait,
antecedent menaces, former grudges, and concerted schemes; and this
express malice is to be inferred, if at all, from the conduct of the
accused, evincing a deliberate design to destroy the life of his victim.
—Murder in the second degree, is the wilful and malicious killing of
another; malice is not confined to a particular ill will towards the
deceased, but it is intended to denote an action flowing from a wicked
and corrupt motive, a thing done with a bad mind, where the fact has
been attended with such circumstances as carry in them the plain
indications of an heart regardless of social duty, and fatally bent
upon mischief: and "therefore malice is implied from any delib-
erate cruel act against another, however sudden." 1st East's Cr.
Law, 214. And "he who wilfully and deliberately does any act
which apparently endangers another's life, and thereby occasions
his death, shall, unless he clearly prove the contrary, be adjudged to

kill him of malice prepense." ib. 225. You will also remember that, " on every charge of murder, the fact of killing being first proved, the law presumes it to have been founded in malice, until the contrary appear ; and therefore all circumstances alledged by way of justification, excuse or alleviation, must be proved by the prisoner, unless they arise out of the evidence produced against him." ib. 340. If, then, the prisoner at the bar did kill the deceased, the presumption of law is that he did it purposely and maliciously, but not with such deliberation and forethought as to make it murder in the first degree, such killing must be considered as murder in the second degree, unless there are found in the evidence some circumstances of justification, excuse or alleviation.

If there are circumstances of justification or excuse, they go to the acquittal of the prisoner ; if of alleviation, they go to reduce the killing to manslaughter. If it is in evidence, that a sudden quarrel had arose between the prisoner and the deceased, and you shall be satisfied that in such sudden quarrel the deceased was killed, and there is no evidence of premeditated design to kill her, such killing will be manslaughter. It has been argued to you, on the authority of 1st East's Crown Law 235, that " if on any sudden provocation of a slight nature, one beat another in a cruel and unusual manner, so that he dies; *though he did not intend to kill him,* it is murder by express malice." But this seems incorrect as an exposition of our statute law on the subject ; such killing would be unintentional ; and while the slayer was in the commission of the unlawful act of beating another, it would therefore be manslaughter, and not murder ; for it is an essential ingredient in murder, both of the first and second degree, that the slayer should *intend to kill.*

From some of the evidence, you may, perhaps, think that the prisoner was intoxicated the night his wife died ; if such should be the impression on your minds, you will remember that drunkenness is not a circumstance in justification, excuse, or alleviation, of any criminal offence ; it is a savage vice, a voluntary madness ; and it would be strange and paradoxical, if the law, which is founded on sound moral principles, should admit an act of voluntary and inexcusable immorality, as a palliation of any crime.

I am requested by the prisoner's counsel to state to you, that if either of you entertain a doubt of the prisoner's guilt, you are bound to acquit him. Such, gentlemen, is the law in favor of life, that a jury of twelve men must all be satisfied that the prisoner is guilty of the crime charged against him, or they must acquit him. To find a verdict of

COLUMBIANA. guilty, you must be satisfied beyond all *reasonable doubt.*
April, 1817. Few things in the affairs of men, are susceptible of strict
Ohio      demonstration; so that an acute intellect may, by subtlety
v.
Gardner.   of reasoning, and plausible sophistry, induce a mind of less
clear perception to doubt of all things which are received and acted on
as truths, by the wisest as well as the most ignorant of men. Men
may thus be led to doubt of their own existence, and even of the exist-
ence of that Being, beneath whose paternal care the whole creation
moves in harmonious order. Such doubts are unreasonable, and
wholly inapplicable to the affairs of men. If, in examining the evi-
dence which you have heard, you find that it is involved in so much
obscurity, uncertainty, or contradiction, as that what caused the death
of the deceased, remains doubtful, then acquit the prisoner. If, on
the other hand, a careful review of the evidence leads your minds to
the conclusion, that the deceased was killed by the prisoner at the bar,
your duty, however painful it may be, requires that you pronounce him
guilty, notwithstanding it is possible that he may be innocent: for,
as jurors, you must exercise your reason upon the facts submitted to
you: and you must draw such conclusions as seem most probable and
certain. If you do this, with that cautious deliberation the magnitude
of the charge requires, whatever may be the result you will have dis-
charged your duty.—Verdict, guilty of manslaughter only.

The prisoner was sentenced to the penitentiary for seven years.